IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(*Southern Division*)

| | |
|---|---|
| **SELECTIVE INSURANCE COMPANY** | * |
| **OF AMERICA** | |
| 40 Wantage Avenue | * |
| Branchville, New Jersey 07890 | |
| | * |
|       Plaintiff, | |
| | * |
| v. | |
| | *    CIVIL ACTION NO. : |
| **RICHFIELD STATION HOMEOWNERS** | |
| **ASSOCIATION, INC.** | * |
| 400 Serendipity Drive | |
| Millersville, Maryland 21108 | * |
| | |
|     Serve on:    Resident Agent | |
|                Michael S. Finley | * |
|                400 Serendipity Drive | |
|                Millersville, MD 21108 | * |
| | |
| **RICHFIELD STATION I JOINT VENTURE** | * |
| c/o Michael L. Roepcke | |
| 8161 Maple Lawn Boulevard | * |
| Suite 105A | |
| Fulton, Maryland 20759 | * |
| | |
|     Serve on:    Resident Agent | |
|                The Austin Group, LTD | * |
|                10347 Crossbeam Circle | |
|                Columbia, MD 21044 | * |
| | |
| **RICHFIELD STATION II JOINT** | * |
| **VENTURE, LLP** | |
| 225 E. Redwood Street | * |
| Baltimore, Maryland 21202 | |
| | * |
|     Serve on:    Resident Agent | |
|                Brown Richfield, II | * |
|                225 E. Redwood Street | |
|                Baltimore, MD 21202 | * |
| | |
| **AUSTIN-SPICKNALL CALVERT** | * |
| **LIMITED PARTNERSHIP** | |

10347 Crossbeam Circle                                *
Columbia, Maryland 21044
                                                      *

    Serve on:    Resident Agent
              The Austin Group, LTD   *
              10347 Crossbeam Circle
              Columbia, MD 21044     *

**AUSTIN-CHESAPEAKE LIMITED**   *
**PARTNERSHIP**
10347 Crossbeam Circle                                *
Columbia, Maryland 20144
                                                      *

    Serve on:    Resident Agent
              The Austin Group, LTD   *
              10347 Crossbeam Circle
              Columbia, MD 21044     *

**AUSTIN-SPICKNALL CALVERT-COX**   *
**LIMITED PARTNERSHIP**
10347 Crossbeam Circle                                *
Columbia, Maryland 21044
                                                      *

    Serve on:    Resident Agent
              The Austin Group, LTD   *
              10347 Crossbeam Circle
              Columbia, MD 21044     *

**THE AUSTIN GROUP, LTD.**      *
6 Clynmalira Court
Phoenix, Maryland 21131                               *

    and                                        *

10805 Hickory Ridge Road                              *
Suite 217
Columbia, Maryland 20144                              *

    Serve on:    Resident Agent     *
              John H. Haas
              6 Clynmalira Court       *
              Phoenix, MD 21131
                                                      *

**MICHAEL L. ROEPCKE**       *
8161 Maple Lawn Boulevard
Suite 105A

Fulton, Maryland 20759                          *

**JOHN H. HAAS**                                *
6 Clynmalira Court
Phoenix, Maryland 21131                         *

**LEONARD O. GERBER**                           *
c/o Michael L. Roepcke
8161 Maple Lawn Boulevard                       *
Suite 105A
Fulton, Maryland 20759                          *

      Defendants.                           *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Selective Insurance Company of America ("Selective"), by and through undersigned counsel, brings this action for a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, against Defendants, Richfield Station Homeowners Association, Inc. ("Richfield HOA"), Richfield Station I Joint Venture ("Richfield I"), Richfield Station II Joint Venture, LLP ("Richfield II"),  Austin-Spiknall Calvert Limited Partnership ("Austin-Spiknall Calvert"), Austin-Chesapeake Limited Partnership ("Austin-Chesapeake"), Austin-Spiknall Calvert-Cox Limited Partnership ("Austin-Spiknall Calvert-Cox"), The Austin Group, Ltd. ("Austin Group"), Michael L. Roepcke, John H. Haas, and Leonard O. Gerber, and alleges as follows:

## NATURE OF CLAIM

1.      This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and Section 2201 of Title 28 of the United States Code to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Selective and their insureds.

2.      This matter arises as a result of another lawsuit filed on June 19, 2014, in the Circuit Court for Calvert County, Maryland (Case Number 04C14000762), against various individuals and entities involved in the residential development of Richfield Station located in the town of Chesapeake Beach in Calvert County, Maryland. Richfield Station is a residential development that includes single-family homes, fee simple townhomes, and condominiums, as well as common area facilities available to persons who reside in the development. The common areas are owned and managed by a homeowner's association and include, among other things, roadways, sidewalks, concrete curbs/gutters, green areas, underground utilities, street lighting, playgrounds, fencing, and storm water management systems (collectively "Common Areas").

3.      The 53-page complaint in that case (attached hereto as Exhibit A) contains 10 causes of action against nine defendants, all of whom are named defendants in this case. Specifically, the plaintiff, Richfield Station Homeowners Association, Inc. ("Richfield HOA"), alleges that defendants defectively constructed the Richfield Station Common Areas, made misrepresentations regarding the Common Areas, and mismanaged Richfield HOA and the Common Areas during the period of developer control. *See* Exhibit A ¶ 2.

4.      All defendants in the underlying lawsuit but Leonard O. Gerber and John H. Haas have tendered the defense of that suit to Selective, requesting coverage under a policy of insurance (number S 1564863-00) issued by Selective. A certified copy of the policy is attached hereto as Exhibit B.[1]

5.      Selective continues to provide a defense to certain defendants in the underlying lawsuit.

---

[1] Selective issued multiple years of insurance under policy S 1564863 with policy effective dates of May 29, 2005, to May 29, 2015. In addition to the policy with effective dates of May 29, 2005 – May 29, 2006 attached hereto as Exhibit B, the declarations pages of the subsequent renewal polices are collectively attached hereto as Exhibit C. Selective represents that no alterations, amendments, or endorsements were made to the policy between May 29, 2005, and May 29, 2015.

6.      The actual controversy in this matter pertains to Selective's defense and indemnity obligation, if any, to the Defendants under the policy.

7.      For the reasons stated in this Complaint, Selective asserts that there is no coverage under the policy based upon the allegations contained within the complaint filed in the underlying lawsuit.

## PARTIES AND JURISDICTION

8.      Selective is an entity organized under the laws of the State of New Jersey and maintains its principal place of business in New Jersey.

9.      Richfield I is a Maryland general partnership and Richfield HOA's original predecessor Declarant.

10.     Richfield II is a Maryland limited liability partnership and Richfield HOA's present successor declarant that continues to develop Richfield Station by adding additional dwelling units, lots, and Common Areas.

11.     Austin-Spicknall Calvert is a Maryland limited partnership, Richfield HOA's developer and successor declarant, as well as a partner in Richfield II and a general partner and affiliate of Richfield I.

12.     Austin-Chesapeake is a Maryland limited partnership and the general partner of Austin-Spicknall Calvert.

13.     Austin-Spicknall Calvert-Cox is a Maryland limited partnership and a partner in Richfield II. The general partner of Austin-Spicknall Calvert-Cox is Austin-Spiknall Calvert.

14.     The Austin Group is a Maryland corporation and a partner in Austin-Chesapeake.

15.     Michael L. Roepcke is a Maryland resident and the President of The Austin Group. Upon information and belief, Roepcke was a director/member of the Richfield HOA

Board of Directors during the period when Richfield HOA was under developer control and a signatory of the Declaration.

16.     Leonard O. Gerber is a Maryland resident and, upon information and belief, was a director/member of the Richfield HOA Board of Directors during the period when Richfield HOA was under developer control.

17.     John H. Haas is a Maryland resident and, upon information and belief, was a director/member of the Richfield HOA Board of Directors during the period when Richfield HOA was under developer control.

18.     Upon information and belief, Roepcke, Gerber, and Haas, jointly and severally, have ownership interests or controlling interest in, or served as agents, employees, officers, directors, partners, or representatives of, Richfield I, Richfield II, Austin-Spicknall Calvert, Austin-Chesapeake, Austin-Spicknall Calvert-Cox, and The Austin Group.

19.     Upon information and belief, all defendants and partners of each defendant partnership reside in Maryland.

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), (c) based on complete diversity of citizenship between the parties and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

21.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2).

## CHOICE OF LAW

22.     Because this case is brought pursuant to diversity jurisdiction, this Court must apply state substantive law and federal procedural law. *See Gasperini v. Ctr. For Humanities*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

23.     This Court should apply the substantive law of Maryland in resolving the instant controversy because the policy was issued to a Maryland entity, the policy was delivered to a Maryland address, and the underlying lawsuit has been brought in a Maryland court pursuant to Maryland law.

## FACTUAL ALLEGATIONS

### *The Underlying Lawsuit*

24.     The plaintiff in the underlying lawsuit, Richfield HOA, is a homeowners' association created for the purposes of owning, supervising, managing, operating, maintaining, repairing, and replacing the Common Areas for the use, benefit, and enjoyment of its homeowner members.

25.     Richfield HOA alleges that the defendants were engaged with the development, design, construction, renovation, maintenance, repair, replacement, and sale of the Common Areas, and in doing so, engaged in "tortious and wrongful" conduct. *See* Exhibit A ¶¶ 19-20.

26.     More specifically, Richfield HOA alleges that the Common Areas were not in good repair nor were properly maintained during the period of developer control: "the Common Areas in some respects . . . fail to meet even minimum acceptable codes and/or standards and were completely neglected, containing numerous items of work that are defective, improperly designed, improperly constructed, constructed with faulty workmanship, constructed with faulty materials, and/or are otherwise in a state of disrepair due to mismanagement during the period of developer control." Exhibit A ¶ 29.

27.     The complaint also references the defendants' alleged failures with regard to control of Richfield HOA including:

a. Failing to maintain fencing around the perimeter of storm water management ponds (Exhibit A ¶ 31.a.);

b. Allowing vegetation to grow within the collection area of several of the storm water management ponds (Exhibit A ¶ 31.b.);

c. Failing to ensure inlet/outlet structures of storm water management ponds were kept clear of debris and vegetation (Exhibit A ¶ 31.c.);

d. Failing to manage reforestation areas to prevent premature death of trees (Exhibit A ¶ 31.d.);

e. Failing to maintain sidewalks and other concrete flatwork (Exhibit A ¶ 31.e.);

f. Failing to maintain roadways (Exhibit A ¶ 31.f.);

g. Failing to remove construction debris (Exhibit A ¶ 31.g.);

h. Failing to address erosion underneath sidewalks due to improper drainage (Exhibit A ¶ 31.h.);

i. Failing to maintain green areas (Exhibit A ¶ 31.i.);

j. Failing to address improper drainage and grading (Exhibit A ¶ 31.j.);

k. Failing to maintain proper fire lanes/no parking demarcations (Exhibit A ¶ 31.k.);

l. Failing to properly manage the snow removal program (Exhibit A ¶ 31.l.);

m. Installation of street lighting on roadways belonging to the Town of Chesapeake Beach in the name of Richfield HOA resulting in unnecessary electric costs (Exhibit A ¶ 31.m.); and

n. Mismanagement of Richfield HOA, including:

   i. Failing to inspect properly and repair Common Areas;

    ii.  Failing to investigate construction deficiencies;

    iii.  Failing to collect sufficient fees to perform maintenance and repairs and to establish adequate reserves for future replacements by wasting/spending Richfield HOA's funds;

    iv.  Failing to protect Richfield HOA's legal rights including its warranty and other rights under the Homeowners Association Act or Maryland law; and

    v.  Concealing, ignoring, or misrepresenting the condition of the Common Areas (Exhibit A ¶ 32).

28.    Richfield HOA states 10 causes of action against the defendants: negligence (Count I); negligent misrepresentation (Count II); negligent misrepresentation by omission (Count III); non-disclosure (Count IV); violation of the Maryland Consumer Protection Act (Count V); breach of duty in the organization and pre-turnover control of the Association (Count VI); breach of duty in the pre-turnover management of the Association (Count VII); breach of fiduciary duty (Count VIII); breach of contract – third party beneficiary (Count IX); civil conspiracy (Count X).

## ACTUAL CONTROVERSY

29.    Richfield I, Richfield II, Austin-Spiknall Calvert, Austin-Chesapeake, Austin-Spiknall Calvert-Cox, The Austin Group, and Roepcke have made a claim for insurance coverage asserting that they are entitled to a defense and indemnity in connection with the underlying lawsuit.

30.    Selective has provided a defense to those parties based upon the allegations contained within the four corners of the complaint.

31.     However, Selective's position is that, under the policy, it has no duty to indemnify defendants based on the allegations in the complaint and therefore no duty to provide them a defense in the underlying lawsuit.

32.     Thus, an actual and justiciable controversy exists among the parties as to the nature and extent of Selective's defense and indemnity obligations to defendants, if any, under the policy.

## COUNT I
### (No "Occurrence" Alleged in Underlying Complaint)

33.     Selective incorporates by reference all preceding paragraphs as if fully set forth herein.

34.     The policy's Commercial General Liability Coverage Form (CG 00011207) provides:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY**
> **DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>     **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>     . . .
>     **b.** This insurance applies to "bodily injury" and "property damage" only if:
>         **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

Commercial General Liability Coverage Form at 1.

35.     Under the policy, "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 15.

36.     However, "there is no 'occurrence' under a comprehensive general liability insurance policy where, and to the extent that, a contractor's use of defective materials and substandard workmanship results in economic losses that would normally be recoverable in a breach of contract action." *U.S. Fire Ins. Co. v. The Milton Co.*, 35 F. Supp. 2d 83, 86 (D.D.C. 1998) (applying Maryland law).

37.     Insurers issue "a general liability policy, not a performance bond," and the term "'occurrence' does not include the normal, expected consequences of poor workmanship." *Reliance Ins. Co. v. Mogavero*, 640 F. Supp. 84, 85-86 (D.Md. 1986).

38.     In the underlying complaint, Richfield HOA alleges that defendants used defective materials and faulty workmanship with regard to construction, repair, and maintenance of Common Areas, among other things.

39.     To the extent that Richfield HOA's alleged damages stem from defendants' conduct that does not constitute an "occurrence" as defined under the policy and applicable Maryland law, Selective asserts that it has no indemnity or defense obligations to defendants with respect to the claims in the underlying lawsuit.

## COUNT II
(No "Occurrence" in Counts IV, V, VI, VII, VIII, IX, and X)

40.     Selective incorporates by reference all preceding paragraphs as if fully set forth herein.

41.     Because the policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," it necessarily follows that non-accidental conduct does not constitute an "occurrence."

42.     Count IV in the underlying complaint purports to state a cause of action for "non-disclosure." *See* Exhibit A ¶¶ 55-60.

43.     Selective asserts that non-disclosure is not conduct that constitutes an "occurrence" under the policy or Maryland law because, among other reasons, the tort requires concealment of material facts with intent to deceive.[2]

44.     Count V in the underlying complaint purports to state a cause of action for "violation of the Maryland Consumer Protection Act." *See* Exhibit A ¶¶ 61-72.

45.     Selective asserts that violation of the Maryland Consumer Protection Act, that is, allegations of unfair or deceptive trade practices, is not conduct that constitutes an "occurrence" under the policy or Maryland law because, among other reasons, plaintiff alleges that "[Defendants] deceived or tended to deceive the Association and its homeowner members." Exhibit A ¶ 68.

46.     Count VI in the underlying complaint purports to state a cause of action for "breach of duty in the organization and pre-turnover control of the Association." *See* Exhibit A ¶¶ 73-86.

47.     Selective asserts that defendants' alleged breach of duty in the organization and pre-turnover control of the Association is not conduct that constitutes an "occurrence" under the policy or Maryland law because, among other reasons, plaintiff alleges that "Defendants knew and/or could foresee . . . the fact that such actions would damage the Association and its homeowner members." Exhibit A. ¶ 83.

---

[2] Under Maryland law, the elements of the tort include (1) duty to disclose; (2) failure to disclose a material fact; (3) intent to deceive; (4) plaintiff acts in justifiable reliance upon the concealment; and (5) plaintiff suffers damages as a result of the concealment. *See Gross v. Sussex, Inc.*, 630 A.2d 1156 (Md. 1993); *Finch v. Hughes Aircraft Co.*, 469 A.2d 867 (Md. Ct. Spec. App. 1984), *aff'd*, 926 F.2d 1574 (Fed. Cir. 1991).

48.     Count VII in the underlying complaint purports to state a cause of action for "breach of duty in the pre-turnover management of the Association." *See* Exhibit A ¶¶ 87-94.

49.     Selective asserts that defendants' alleged breach of duty in the pre-turnover management of the Association is not conduct that constitutes an "occurrence" under the policy or Maryland law because, among other reasons, plaintiff alleges that "[Defendants] knowingly disregarded and breached their duties." Exhibit A ¶ 92.

50.     Count VIII in the underlying complaint purports to state a cause of action for "breach of fiduciary duty." *See* Exhibit ¶¶ 95-108.

51.     Selective asserts that defendants' alleged breach of fiduciary duty is not conduct that constitutes an "occurrence" under the policy or Maryland law because, among other reasons, plaintiff alleges that "[Defendants' conduct] constitutes a conscious decision with substantial knowledge on [their] part . . . ." Exhibit A ¶ 106.

52.     Count IX in the underlying complaint purports to state a cause of action for "breach of contract – third party beneficiary." *See* Exhibit A ¶¶ 109-122.

53.     Selective asserts that the defendants' alleged breach of contract is not conduct that constitutes an "occurrence" under the policy or Maryland law.[3]

54.     Count X in the underlying complaint purports to state a cause of action for "civil conspiracy." *See* Exhibit A ¶¶ 123-126.

55.     Selective asserts that the defendants' alleged civil conspiracy is not conduct that constitutes an "occurrence" under the policy or Maryland law.[4]

---

[3] *See Lerner Corp. v. Assurance Co. of America*, 707 A.2d 906, (Md. Ct. Spec. App. 1998).

[4] Under Maryland law, the elements of an action for civil conspiracy include: (1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damage resulting to the plaintiff. *Van Royen v. Lacey*, 277 A.2d 13 (Md. 1971).

## COUNT III
("Expected or Intended Injury" Excludes Coverage for Counts IV, V, VI, VII, VIII, IX, and X)

56.     Selective incorporates by reference all preceding paragraphs as if fully set forth herein.

57.     Assuming *arguendo* the conduct alleged in Counts IV, V, VI, VII, VIII, IX, and X constitute an "occurrence" under the policy and Maryland law, the policy nevertheless excludes coverage for such conduct.

58.     The policy provides the following:

**2. Exclusions**

This insurance does not apply to:

**a.      Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Commercial General Liability Coverage Form at 2.

59.     Selective asserts that non-disclosure, violation of the Maryland Consumer Protection Act, breach of duty in the organization and pre-turnover control of the Association, breach of duty in the pre-turnover management of the Association, breach of fiduciary duty, breach of contract – third party beneficiary, and civil conspiracy all result in "property damage" expected or intended from the standpoint of the insured, to the extent any "property damage" results.

## COUNT IV
(No "Property Damage" in Counts II, III, IV, V, VI, VII, VIII, IX, and X)

60.     Selective incorporates by reference all preceding paragraphs as if fully set forth herein.

61.     The policy provides that Selective will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Commercial General Liability Coverage Form at 1. As such, even where there is an "occurrence" under the policy, the damages are not covered unless they stem from "property damage" as defined in the policy.

62.     The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." Commercial General Liability Coverage Form at 16.

63.     A commercial general liability policy does not provide coverage where there is no property damage other than the defective workmanship itself. *Travelers Indem. Co. of America v. Tower-Dawson, LLC*, No. 07-1525 (4th Cir. Oct. 31, 2008) (applying Maryland law). Property damage expressly "excludes the replacement of substandard materials and repair of inferior workmanship." *U.S. Fire Ins. Co. v. The Milton Co.*, 35 F. Supp. 2d 83, 86 (D.D.C. 1998) (applying Maryland law).

64.     In the underlying complaint, the plaintiff does not allege that the defendants' conduct in Counts II – X, that is, negligent misrepresentation, negligent misrepresentation by omission, non-disclosure, violation of the Maryland Consumer Protection Act, breach of duty in the organization and pre-turnover of the Association, breach of duty in the pre-turnover management of the Association, breach of fiduciary duty, breach of contract, and civil conspiracy, directly resulted in physical injury to tangible property. Moreover, plaintiff does not

allege that such conduct resulted in damage to property other than the property that was

developed using allegedly faulty products or defective workmanship, which does not constitute

"property damage."

65.     To the extent that the defendants' alleged conduct did not result in "property

damage" as defined under the policy and applicable Maryland law, Selective asserts that it has no

indemnity or defense obligations to defendants with respect to the claims in the underlying

lawsuit.

**COUNT V**

("Damage to Your Work" Excludes Coverage for the Underlying Complaint)

66.     Selective incorporates by reference all preceding paragraphs as if fully set forth

herein.

67.     Assuming *arguendo* that "property damage" was caused by an "occurrence," the

policy excludes coverage for damage to the insured's work.

68.     The policy provides the following:

**2. Exclusions**

This insurance does not apply to:

**l.     Damage To Your Work**

"Property damage" to "your work" arising out of it
or any part of it and included in the "products-
completed operations hazard".

This exclusion does not apply if the damaged work
or the work out of which the damage arises was
performed on your behalf by a subcontractor.

Commercial General Liability Coverage Form at 5.

69.     Under the policy, "your work" means "work or operations performed by you or

on your behalf; and materials, parts or equipment furnished in connection with such work or

16

operations." It includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and the providing of or failure to provide warnings or instructions." Commercial General Liability Coverage Form at 16.

70.    In the underlying complaint, the plaintiff does not allege that the defendants' conduct resulted in "property damage" to property other than the defendants' work, that is, "your work" as defined by the policy.[5]

71.    To the extent that the defendants' alleged conduct resulted in "property damage" to "your work," Selective asserts that it has no indemnity or defense obligations to defendants with respect to the claims in the underlying lawsuit.

**COUNT VI**
(Failure to Comply with Policy Conditions)

72.    Selective incorporates by reference all preceding paragraphs as if fully set forth herein.

73.    The policy provides the following:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**c.** You and any other involved insured must:
...
**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"

Commercial General Liability Coverage Form at 11.

74.    Pursuant to the policy's conditions, in a letter dated November 4, 2014, Selective requested the production of nine categories of documents in order to determine whether there is a

---

[5] Defendants claim that they retained various subcontractors during the development of Richfield Station such that the subcontractor exception to the "Damage to Your Work" exclusion would apply. Selective requested documentation evidencing any contractor-subcontractor relationships involving Defendants and others, but Defendants have produced no evidence of such relationships. *See infra* Count VI.

potential for coverage under the policy and to determine the insured's scope of work. Letter from Edward J. Moller, Selective Complex Claims Specialist, to Richfield Station II Joint Venture, LLP, et al (Nov. 4, 2014) (attached hereto as Exhibit C).

75.     Having received no reply to its November 4, 2014, Selective instructed its attorneys to reiterate the document request to the defendants' counsel. *See* Letter from Jeffrey A. Wothers, attorney for Selective, to Kevin Pascale, attorney for defendants (Jan 15, 2015) (attached hereto as Exhibit D).

76.     Once again, Selective's attorneys made a final demand for documentation by letter dated January 28, 2015. *See* Letter from Jeffrey A. Wothers, attorney for Selective, to Kevin Pascale, attorney for defendants (Jan. 28, 2015) (attached hereto as Exhibit E).

77.     Rather than producing the requested documentation or at least attempting to do so, defendants' counsel advised that defendants would make available "35 to 40 full length bankers' boxes" containing documents from the "early 1990s" through which Selective's representative could comb for the specific documents it had requested. *See* Letter from T. Christine Pham, attorney for defendants, to Jeffrey A. Wothers, attorney for Selective (Jan. 29, 2015) (attached hereto as Exhibit F).

78.     To date, defendants have failed to produce the documents Selective has requested in violation of defendants' obligations under the policy.

79.     To the extent that defendants' refusal to cooperate with Selective constitutes a breach of the policy's terms and conditions, Selective asserts that it has no indemnity or defense obligations to defendants with respect to the claims in the underlying lawsuit.

**WHEREFORE,** Selective respectfully prays:

(1)     That this Court enter judgment declaring that, pursuant to the relevant
        insurance policy and applicable law, Selective has no defense or
        indemnity obligations to Defendants in the underlying lawsuit;

(2)     That the Court enter judgment declaring the parties' respective rights and
        obligations with respect to the claim for coverage asserted by Defendants;
        and

(3)     That this Court award Selective any further relief this Court may deem just
        and proper.

Respectfully submitted,

Jeffrey A. Wothers (Bar No. 85090)
Stacy L. Sallerson (Bar No. 30001)
NILES, BARTON & WILMER, LLP
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21202-6185
T: 410-783-6300
F. 410-783-6363
jawothers@nilesbarton.com
slsallerson@nilesbarton.com
*Counsel for Plaintiff Selective Insurance
Company of America*